CARBONE, INC. and Frank E. Toole, Jr., Plaintiffs,

v.

PROCTOR ELLISON CO., Advanced Marketing Corp., Irving Spector, and Paul Callahan, Defendants.

Civ. A. No. 84–1832–MA.

United States District Court, D. Massachusetts.

Sept. 17, 1984.

---

Peter Resnik, David Boch, Herrick & Smith, Boston, Mass., for defendant Proctor Ellison.

Arthur Goldstein, Goldstein & Goldstein, Worcester, Mass., for defendants Advance Marketing and I. Spector.

Michael R. Hugo, Denner & Benjoya, Boston, Mass., for plaintiffs.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

MAZZONE, District Judge.

This matter is before the Court on the various defendants' motions to dismiss the first amended complaint.[1] The complaint is in 5 counts: Count I is brought pursuant to the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961–1968. The remaining counts are all pendent claims: Count II for breach of contract; Count III is for assault; Count IV alleges a violation of M.G.L. c. 93A; and Count V alleges an interference with a business relationship. The only federal claim is Count I, and it is to that claim that these motions are addressed principally.

Essentially, the defendants complain that Count I, the RICO count, fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure because it does not state the circumstances of the fraud alleged with particularity. The original complaint also was subjected to a motion to dismiss. That motion was denied without prejudice, noting that the plaintiffs had filed an amended complaint. In order to cure the obvious defects in the original complaint, the plaintiffs added the following to the RICO count to describe the required "racketeering activity:"

(a) In January 1980 and on other diverse occasions, Defendant P.E., through its agent Wendell Freeman, wrongfully led the Plaintiffs to believe that it would assist them in staying in business while it knew that the Plaintiffs could not possibly meet demands which it would place on them at a later date.

(b) Defendant P.E., through its agent Wendell Freeman, wrongfully led the Plaintiffs to believe that the relationship was continuing and that certain delays being experienced were attributable to inventory control related problems on diverse occasions including October of 1980, when the Defendant knew that it had no intention of continuing the relationship with the Plaintiffs.

(c) Defendant, P.E., through its agents Wendell Freeman and Harold Jenkins, wrongfully led the Plaintiffs to believe that it was placing orders with suppliers on their behalf while it was in fact only receiving money from the Plaintiffs and not placing the orders on their behalf;

(d) In 1981, Defendant, P.E., through statements made by Freeman and Jenkins to Toole, wrongfully led the Plaintiffs to believe that their employees, agents and servants, Defendants AMC, SPECTOR and CALLAHAN, would work in the Plaintiff's benefit to attempt to alleviate the insurmountable financial burden cast upon it by the Defendant P.E.'s fraudulent, negligent and/or intentional acts, while the Defendants were

1. No appearance has been filed by the defendant, Paul Callahan. There is no indication that he has been served during the time in which he must respond. Fed.R.Civ.P. 4(g). In any event, this memorandum also applies to the claims against him.

knowingly working to the detriment of Carbone, Inc. and Toole; and

(e) In the summer of 1981, Defendants AMC, SPECTOR and CALLAHAN, as agents of Defendant P.E. wrongfully led the public and in particular various customers of Carbone, Inc. and Toole, to believe that they were agents and employees of Carbone, Inc. and Toole, while threatening various customers with partial or total disfigurement, grave bodily harm and death.

In the paragraph following this description, the plaintiff concludes:

14. In the course of and in furtherance of defendants' enterprise and scheme to defraud plaintiff, defendants utilized or caused to be utilized the United States mail and electronic facilities in interstate commerce on two or more occasions and thereby violated 18 U.S.C. §§ 1341, 1342, 1343 and 1962.

This case presents two familiar issues: whether the RICO cause of action requires a "special racketeering enterprise injury" and whether the predicate acts must be indictable offenses. I have discussed these issues at length in two earlier memoranda and no further discussion is needed here. *Econo-Car International, Inc. v. Agency Rent-A-Car, Inc.*, 589 F.Supp. 1368 (1984) and *Grado, et al. and Technographics, Inc. v. Gross, et al.*, C.A. No. 84-1087-MA (August 20, 1984). However, I cite those memoranda as evidence of the serious dispute that exists among the circuits as to the limits of RICO claims. I also expressed in these memoranda my concern over the proliferation of these claims and, although I sided with the 7th Circuit and adopted the view of Judge Posner in *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984), I am mindful that the line between a true federal cause of action and the garden variety frauds that are best left to the state courts is a very thin one. Accordingly, if this cause of action, labelled as a federal claim, is to be allowed to continue, it should be plain, specific and direct. This amended claim is not.

Rule 9 of the Federal Rules of Civil Procedure requires "specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). The purpose, of course, is to provide the defendant with clear notice of the grounds on which the plaintiff's fraud claim rests, whether labelled as a RICO claim or a common law fraud claim.

■ It is unfair to put the defendants to the burden of defending themselves in a federal court on the type of bare conclusory allegations made here. Experience shows these cases generate extensive discovery with great expense and effort by all parties. Our interest in a fair, inexpensive and efficient resolution of the issues mandates that we insist on clear and explicit notice pleading, especially in this type of case. *Bache Halsey Stewart Shield, Inc. v. Tracy Collins Bank*, 558 F.Supp. 1042, 1045 (D.Utah 1983); *Taylor v. Bear Stearns & Company*, 572 F.Supp. 667, 682 (N.D.Ga.1983).

■ Here, given the fact that the plaintiff has had two opportunities to describe his claims, the last after being notified of the failures of the first complaint, the complaint is still not adequate. Basically, it alleges the defendants ... "wrongfully led the plaintiffs to believe" certain facts, and "wrongfully led the public and in particular various customers ... to believe" certain facts.

Tacked onto these allegations is a simple conclusory paragraph, namely, that the defendants used the mails or electronic facilities in interstate commerce on two or more occasions thus satisfying the requirements of the two predicate acts. There is no description of any particular act, time, place, participant or what possible indictable offense was committed. There are two possible inferences to be drawn from this lack of information. The first is that there is no information. The second is that the plaintiff does not wish to divulge any

information.[2] In either case, the complaint falls into the category of concerns expressed in my earlier memoranda and should not be allowed to continue in this Court. The RICO count will be dismissed for failure to charge the frauds alleged with particularity. Fed.R.Civ.P. 9(b).

Further, because the basis for federal jurisdiction is removed, under my discretion and under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the pendent claims are also dismissed.

In accordance with the above, the complaint is dismissed in its entirety as to all defendants.

SO ORDERED.

---

2. A third possibility would be that the plaintiffs require discovery to uncover details of the alleged fraud. Discovery, as noted earlier, is expensive and time-consuming for this type of claim, here alleged to have occurred beginning in January, 1980 and extending into the summer of 1981. Moreover the plaintiffs say "In this case where the issues of racketeering are complex and occurred over a long period of time, Plaintiff's Amended Complaint would become long and complicated if more detail was included." *Plaintiffs' Brief in Opposition, p. 3.* Having acknowledged the existence of more detail, and not pleading it, the plaintiffs cannot require the defendants be put to the expense and effort of ferreting it out.