**NEW ENGLAND DATA SERVICES, INC., Plaintiff, Appellant,**

v.

**Barry BECHER, et al., Defendants, Appellees.**

No. 86–1692.

United States Court of Appeals, First Circuit.

Heard May 5, 1987.

Decided Sept. 28, 1987.

John D. Deacon, Jr. with whom Edwards & Angell, Providence, R.I., was on brief, for plaintiff, appellant.

Michael H. Feldhuhn with whom Max Wistow and Wistow & Barylick Inc., Providence, R.I., were on brief, for defendants, appellees Barry Becher and Edward Valenti.

Marc DeSisto, with whom Joseph A. Kelly and Carroll, Kelly & Murphy, Providence, R.I., were on brief, for defendants, appellees David Schechter and Monarch Investments.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal arises from an order of the Rhode Island District Court dismissing plaintiff New England Data Services, Inc.'s complaint. The complaint alleged a viola-tion of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO"), and three state law claims. The district court dismissed the RICO claim for failure to plead the predicate acts of mail and wire fraud with sufficient particularity pursuant to Fed.R.Civ.P. 9(b). The court then dismissed the pendent state claims because federal subject matter jurisdiction was based solely on the RICO claim.

## I

New England Data alleged that a sale of the stock in two corporations by defendants Becher and Valenti to defendants Monarch Investments and Schechter was a fraudulent transfer that prevented plaintiff from satisfying state court judgments it had against the corporations. Becher and Valenti were the officers and stockholders of International Broadcast Industries, Inc. (IBI) and Ginsu Products, Inc. (Ginsu), and Schechter was their attorney. Plaintiff had brought suit in state court against Ginsu and IBI, for monies owed. Shortly after entry of judgment in favor of plaintiff, Becher, Valenti and Schechter, pursuant to an alleged conspiracy to defraud creditors, sold all the stock of Ginsu and IBI to buyers, including defendants Schecter and Monarch Investments, an entity created by Schecter. Purportedly to secure payment for the sale of stock, Becher and Valenti were given a first priority security interest in the assets of Ginsu and IBI. The transfer of the security interest was made without fair consideration to the corporations, thereby rendering the corporations insolvent. The sale of stock and the transfer of the security interest were allegedly sham transactions conducted by defendants for the purpose of defrauding creditors, including plaintiff. After plaintiff commenced efforts to collect its judgment against Ginsu and IBI, defendants Becher and Valenti declared a default under the stock sale agreement, and exercising their rights as holders of a security interest, took possession of Ginsu's and IBI's assets.

After plaintiff commenced this suit in federal court, defendants moved to dismiss.

A magistrate recommended that the motion be granted on the grounds that plaintiff failed to allege with particularity the RICO predicate acts of mail and wire fraud, as required by Fed.R.Civ.P. 9(b). After a hearing on the issue, the district court denied the motion to dismiss and allowed plaintiff to serve interrogatories upon defendants limited to the question of whether defendants used the wires and, or, mails in executing the alleged transactions. Defendants denied any knowledge thereof and the court dismissed the complaint pursuant to Rule 9(b).[1]

## II

RICO provides for a private right of action for "[a]ny person injured in his business or property by reason of a violation of § 1962 ..." 18 U.S.C. § 1964(c). This plaintiff alleges violations of 18 U.S.C. § 1962(b), (c) and (d).[2] "Racketeering activity," as defined in § 1961(1)(B), includes two "predicate acts" of mail or wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1343, respectively.

In regards to pleading mail and wire fraud, plaintiff's complaint stated:

> On information and belief, in effecting the stock sale agreement, the grant of the security interest, in purporting to exercise remedies to enforce said security interest, and in furtherance of the fraudulent scheme, defendants on two or more occasions used the mails and/or transmitted communications by wire in interstate or foreign commerce ...

The issue on appeal is how Fed.R.Civ.P. 9(b)'s special pleading requirement interacts with mail and wire fraud allegations under RICO. Although this circuit has not yet addressed this issue, it is clear that in a general fraud case, Rule 9 "requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). The major purpose of Rule 9 is to give adequate notice of the plaintiff's claim of fraud. *Id.* at 228–29.

In the context of securities litigation, we have expressed the fear that a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement, rather than in the hopes that the process will reveal relevant evidence. *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979), citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975)). In *Wayne*, this court further stated that allegations based on "information and belief," as in the instant complaint, do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded. *Id.* Furthermore, this requirement of pleading supporting facts applies "even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* at 14. Thus, in the securities context, and in general, this circuit has strictly applied Rule 9(b). *See also Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985) ("in cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and

---

**1.** Appellant contends that it was unclear whether the district court acted pursuant to Rule 9(b) or Fed.R.Civ.P. 56; because we consider the district court's order to be clearly based on Rule 9(b), we do not address the latter argument.

**2.** 18 U.S.C. § 1962(b), (c) and (d) states:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.

subsequently to search for a cause of action.") (citing *López v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 766 (D.R.I.1984)).

■ Although this circuit has not yet ruled on *how* Rule 9(b) impacts on the pleading of RICO predicate acts, it is clear that Rule 9(b) does *apply* to civil RICO claims. *See, e.g., Micro-Medical Industries, Inc. v. Hatton*, 607 F.Supp. 931 (D.P.R.1985); *Carbone v. Proctor Ellison Co.*, 102 F.R.D. 951 (D.Mass.1984); *see also C.M. Flowers v. Continental Grain Co.*, 775 F.2d 1051 (8th Cir.1985); *Bosteve, Ltd. v. Marauzwski*, 642 F.Supp. 197 (E.D.N.Y.1986); *Federal Deposit Insurance Corp. v. Kerr*, 637 F.Supp. 828, 834 (W.D.N.C.1986). The issue now becomes whether Rule 9(b) should be applied to RICO mail and wire fraud as strictly as this circuit has applied the Rule to securities fraud and general fraud.

Generally, there are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations. *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 263–64 (W.D.Okla.1983). *See also Gaudette v. Panos*, 644 F.Supp. 826, 834 (D.Mass.1986).

There is a definite split among the circuits in their treatment of Rule 9(b) and predicate acts. Some courts have espoused a more lenient approach and advocated the allowance of discovery before dismissing a claim, whereas others tend to mandate dismissal in order to avoid "strike suits" or the like. We will discuss the pros and cons of these two approaches.

Some courts have held that Rule 9(b) must be harmonized with Fed.R.Civ.P. 8(a), the modern rule of notice pleading which mandates only short and plain statements sufficient to place the defendant on notice. *See McGinty*, 633 F.2d at 229; *see also Micro-Medical Industries, Inc. v. Hatton*, 607 F.Supp. at 936; *Eaby v. Richmond*, 561 F.Supp. 131, 137 (E.D.Pa.1983).

In *Eaby v. Richmond*, although the court found that the complaint clearly did not sufficiently particularize the RICO predicate act of mail fraud, the court declined to impose the "draconian result of dismissal." 561 F.Supp. at 137. The court considered plaintiffs' argument that the facts underlying their claim were particularly within the defendants' knowledge. Also, plaintiffs argued that if granted an opportunity to discover, they could amend their complaint and cure any pleading defect. The court, in light of the liberal federal policy favoring amendments, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), allowed the plaintiffs sixty days to conduct discovery and then amend their complaint.

In *Federal Deposit Insurance Corp. v. Kerr*, 637 F.Supp. at 835, the court found that a basic outline of a scheme to defraud had been set forth, however the complaint did not set forth with particularity which defendants had used the mails or interstate wires. The court considered the fact that this information was peculiarly within the knowledge of the defendant, and thus less detail should be required. The plaintiffs were ordered to amend their complaint and plead the RICO predicate acts more specifically.

Whether the facts are peculiarly within the defendant's control is a factor given different weight by different courts. Those courts that focus on avoiding the drastic result of dismissal tend to include this consideration as a persuasive factor, whereas those that focus on avoiding "strike suits" or the like tend to not include it as a consideration. *See, e.g., Federal Deposit Insurance Corp. v. Kerr*, 637 F.Supp. at 834; *Chambers Devel. Co. v. Browning-Ferris Industries*, 590 F.Supp. 1528, 1538 (W.D.Pa.1984) (pleading requirement should be relaxed if information peculiarly within defendant's knowledge); *Rich-Taubman Associates v. Stamford Restaurant Operating Co.*, 587 F.Supp. 875, 880 (S.D.N.Y.1984); *Merrit v. Libby, McNeill & Libby*, 510 F.Supp. 366, 373 (S.D.N.Y.1981). *But see Wayne*, 739 F.2d at 14 (supporting

facts must be pleaded even when facts peculiarly within defendant's knowledge); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974).

In *Chambers Devel. Co.*, 590 F.Supp. at 1537, the court refused to dismiss the case even though the plaintiff's complaint merely gave "conclusory statements that each of the defendants used the mails and wire communications to 'effectuat[e] the ... scheme to defraud and destroy the plaintiff'." Thus, although the complaint clearly did not comply with the requirements of Rule 9(b), the court ordered discovery and thereafter an opportunity to amend the complaint. The court reasoned that the " 'draconian result of dismissal' should not be automatic in RICO cases, especially when the facts underlying the claims are within the defendants' control." *Id.* at 1538–39.

Not all courts are so sympathetic to plaintiffs. In *Carbone v. Proctor Ellison Co.*, 102 F.R.D. 951 (D.Mass.1984), the court dismissed a civil RICO claim because the plaintiff failed to plead with particularity the RICO predicate acts of mail and wire fraud. Relying upon this court's decision in *McGinty*, 633 F.2d 226, the court reasoned, "It is unfair to put the defendants to the burden of defending themselves in a federal court on the type of bare conclusory allegations made here."

Similarly, in *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299 (D.Colo.1984), the court dismissed a RICO claim for failure to allege RICO's predicate acts with particularity, noting:

> In face of the difficulties the courts have had in interpreting the provisions of RICO and also in face of the treble damage liability which defendants are subject to, it is imperative that [the defendants], as well as the court, be placed on clear notice as to the elements constituting [plaintiff's] RICO allegations.

*Id.* at 1305–06 (citation omitted).

The court in *Saine* further reasoned:

> ... A charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud. RICO should not be

construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon.

*Id.* at 1306 n. 5.

Similarly, in *Bosteve, Ltd. v. Marauszwski*, 642 F.Supp. 197, 198 (E.D.N.Y.1986), the court explained that "[a] complaint alleging RICO mail fraud must specify, *inter alia*, precisely what statements were made, when and by whom they were made, the content of such statements and the manner in which they were misleading." *See also Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 640 F.Supp. 1168, 1176 (S.D.Fla.1986) ("A complaint alleging RICO, like a complaint alleging fraud, should be filed only after a wrong is reasonably believed to have occurred. It should be a vehicle to right a wrong, not to find one.").

## III

■ We hold that Rule 9(b) requires specificity in the pleading of RICO mail and wire fraud. This degree of specificity is no more nor less than we have required in general fraud and securities fraud cases. *See McGinty*, 633 F.2d 226; *Wayne*, 739 F.2d 11. However, in a RICO mail and wire fraud case, in regards to the details of just when and where the mail or wires were used, we hold that dismissal should not be *automatic* once the lower court determines that Rule 9(b) was not satisfied. In an appropriate case, where, for example the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.

We advocate this procedure because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts. In the instant case, it is seemingly impossible for the plaintiff to have known

exactly when the various defendants phoned or wrote to each other or exactly what was said. The plaintiff clearly set out a general scheme, which very plausibly was meant to defraud the plaintiff, and also probably involved interstate commerce. Assuming the facts as stated in plaintiff's complaint, defendant Monarch Investments is incorporated in a different state than that resided in by the other defendants. In this day and age, it is difficult to perceive how the defendants would have communicated without the use of the mail or interstate wires. *See Federal Deposit Insurance Corp. v. Kerr,* 637 F.Supp. at 835 ("... it is hard to imagine how such a transaction could be carried out without the use of such interstate devices.").[3]

◼ Although this circuit court declined to consider as a factor whether the facts are peculiarly within the defendant's control in a securities fraud case, *see Wayne,* 769 F.2d at 14 and discussion *ante,* pp. 288–289, we include it as one factor in regards to the particular uses of mail or wire in a mail and wire fraud case which otherwise alleges detailed facts that make it seem likely that interstate mail or telecommunications facilities were used. Where there are multiple defendants, as here, and where the plaintiff was not directly involved in the alleged transaction, the burden on the plaintiff to know exactly when the defendants called each other or corresponded with each other, and the contents thereof, is not realistic. Plaintiff here provided an outline of the general scheme to defraud and established an inference that the mail or wires was used to transact this scheme; requiring plaintiff to plead the time, place and contents of communications between the defendants, without allowing some discovery, in addition to interrogatories, seems unreasonable. *See, e.g., Eaby,* 561 F.Supp. 131; *Chambers,* 590 F.Supp.

1528; *Federal Deposit Insurance Corp. v. Kerr,* 637 F.Supp. 828.

We point out that we are not distinguishing between RICO claims in general and security fraud claims. RICO is increasingly being used by plaintiffs as a vehicle for securities fraud actions, or in combination thereof, since one of RICO's predicate acts is "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D). *See, e.g., Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 18 & n. 4 (2d Cir.1983) ("garden variety securities fraud claims" can be brought under civil RICO), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231 (S.D.N.Y.1983) (combining claims under both the securities laws and RICO); Note, *Pleading Securities Fraud Claims With Particularity Under Rule 9(b),* 97 Harv.L.Rev. 1432, 1435 (1984). And we certainly do not intend to create two bodies of law by making it easier to bring a charge of racketeering than securities fraud. However, it seems more likely that the facts would be peculiarly within the defendants' control in the context of RICO mail and wire fraud rather than in general securities fraud. The specifics required for the latter are much less demanding in the sense that they merely require a showing that fraud was actually committed. In RICO, the plaintiff must go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communication perpetrating that fraud. Discovery is warranted to a greater extent in mail and wire fraud.

The district court, in conducting this two-part test of (1) whether Rule 9(b) was satisfied, and if not, (2) whether to allow discovery, must view these above factors as a whole, *i.e.,* the general scheme to defraud, the establishment of interstate commerce and the resulting implication of the use of interstate wires and mails, multiple defendants and whether the communications were between the defendants solely or between

---

**3.** The court in *Harris Trust & Sav. Bank v. Ellis,* 609 F.Supp. 1118, 1122 (D.C.Ill.1985) also considered interstate wire communication and whether one could infer that any such use occurred based on the residence of all the parties. However, because all the parties resided in one state, the court did not reach such an inference.

the defendants and the plaintiffs, which would affect the final factor of whether the facts were peculiarly within the defendants' control. In addition to these factors, the court must keep in mind the purpose of Rule 9(b), including avoiding groundless claims and strike suits, the potential damage to a defendant's reputation, especially if the underlying RICO claim is based on criminal activities, and ensuring that defendants have been adequately put on notice to enable them to give meaningful responses. *See* discussion *ante* p. 289. On the other side of the scale, the court should note the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court. *See United States v. Hougham*, 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960).

## IV

■ It is apparent in the instant case that the complaint does not satisfy Rule 9(b). The plaintiffs have merely stated conclusory allegations of mail and wire fraud, *see ante* p. 288, with no description of any time, place or content of the communication. The district court, after properly determining that plaintiff's complaint did not satisfy Rule 9(b), gave plaintiff the opportunity to serve interrogatories on the defendants on the issue of the use of the wires and mails. Defendants responded that, "to the best of [their] recollection," they had not used the wires and mails. At the subsequent hearing, plaintiff submitted an affidavit which contended that defendants' answers were evasive and untruthful, and requested that further discovery be allowed, including compliance with a previously pending document request to which defendants had not objected and with which the court had ordered defendants to comply. The court rejected plaintiff's request for further discovery and granted defendants' motion to dismiss.

■ We believe the district court abused its discretion in denying the request for further discovery. Interrogatories are certainly not the most effective tool of discovery, especially where, as here, defendants' answers were expressly based upon a lack of recollection. Furthermore, defendants neglected to comply with the court ordered document request which would have resulted in production of any documents reflecting defendants' alleged use of the wires or mails. Clearly the document production is a more effective and thorough method of determining whether defendants had used the wires or mails. Here, where plaintiffs had specifically set out a general scheme to defraud and the probability of interstate communication, we do not think a token interrogatory was a meaningful opportunity to discover if defendants had used the mail or wires, a fact peculiarly within defendants' knowledge and difficult to expose. Of course, not all complaints will allege facts as strong as this one and thus we do not rule out the use of interrogatories alone if the facts do not warrant any further discovery.[4] Based on the strength of plaintiff's allegations of a fraudulent scheme, we remand for further discovery solely on the issue of defendants' alleged use of the wires and mails to effectuate that scheme. Plaintiff shall be given sixty days for such discovery and to amend its complaint to comply with Rule 9(b).

*Reversed and remanded.*

---

**4.** This comment is not meant to reflect on the strengths of the merits of the case or the possible outcome.