**John D. HERRING, Plaintiff,**

v.

**P.A. VADALA, Child Savers, Inc., Donald J. Tullie, J & D Safety Systems, Inc., Paul H. Shannon, William E. Bergstrom and Maureen Shannon, Individually and as Loan Officer of Sentry Federal Savings Bank, Defendants.**

**Civ. A. No. 87–1103–MA.**

United States District Court,
D. Massachusetts.

Oct. 5, 1987.

Charles W. Bohmfalk, Centerville, Mass.,
for John Herring.

Ralph C. Pino, Gloucester, Mass., for
Child Savers & P.A. Vadala.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This diversity action is before the Court on the defendants' various motions to dismiss. The motions assert the complaint fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and fails to allege fraud with particularity, Fed.R. Civ.P. 9(b). Because this case has followed a somewhat uneven course, I will begin with the initial complaint.

The plaintiff's original complaint charged the named defendants in five counts with engaging in usurious loans, actions of fraud and breach of contract. In an abbreviated form, the plaintiff alleges the following facts.

On November 25, 1985, the plaintiff filed a loan application with Maureen Shannon, a loan officer at Sentry Federal Savings Bank, Hyannis, Massachusetts. The purpose of the loan was to develop a school bus safety system the plaintiff had invented. Maureen Shannon informed the plaintiff that the bank did not make loans for the development of inventions, but referred him to Donald Tullie for financial assistance in developing the invention. The plaintiff and Tullie executed a partnership agreement under the name of J & D Safety Systems to develop, patent and market the invention. On March 4, 1986, a patent application was filed.

Due to his efforts to develop his invention, the plaintiff's financial condition was poor. Tullie, knowing of the plaintiff's financial distress, arranged two short term loans by the defendant, Paul Shannon, defendant Maureen Shannon's husband, one on January 24, 1986 for $1,500 and another on March 14, 1986 for $2,000. The notes called for an interest rate of approximately 400% per year and forfeiture of 10% of the plaintiff's interest in the invention if he failed to repay the loans on time. Apparently, the plaintiff repaid these loans, alleged to be usurious and unlawful. Count I seeks a return of interest in the amount of $1,000 from Shannon and Tullie, jointly and severally.

On April 7, 1986, a further note was arranged by Tullie with still another defendant, William E. Bergstrom. That note was for $5,000, contained the same 10% forfeiture of interest provision and charged interest of $1,200, which amounts to a rate of about 144% per year. Apparently this note was also repaid. Count II seeks a return of interest in the amount of $1,200 from Bergstrom and Tullie, jointly and severally.

The plaintiff's financial woes continued and on May 6, 1986, he was allegedly fraudulently induced by defendants Tullie and P.A. Vadala to execute a series of agreements through which he was divested of his interest in his invention. Count III seeks 2,000 shares of J & D Safety Systems, Inc. for the plaintiff and asks that the Court cancel the certificates of those shares issued in the names of defendants Vadala and Tullie, further asking that payments made to him for his shares be determined to be liquidated damages under the agreement with Vadala.

On May 26, 1986, Child Savers, Inc. and the plaintiff executed a consulting agreement whereby the plaintiff was to be paid $2,000 per month for three years, or a total of $72,000. After payment of $3,400, Child Savers, Inc. has refused to pay further. Count IV seeks $68,600 due under the agreement, with interest and costs.

Count V is a general conspiracy count, charging all the defendants with arranging usurious loans and defrauding him of his interest in the school bus safety system. Count V seeks $140,000,000.00 in damages. Plaintiff Herring also seeks costs and attorneys' fees with respect to all counts.

This rather stark but ambitious complaint attracted the predictable responses from the defendants. I describe the defendants' various motions in the order the defendants are named in the complaint. P.A. Vadala, named in Counts III and V, filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), 9(b). Child Savers, Inc., named in Counts IV and V, conceded that Count IV alleges a breach of contract, but moved to dismiss Count V because it did not satisfy the pleading requirements of

Fed.R.Civ.P. 12(b)(6) and 9(b). Donald Tullie, named in Counts I, II, III, and V, moved to dismiss pursuant to Rules 12(b)(6), 9(b) and 8(a). J & D Safety Systems, Inc., named in Counts III and V, moved to dismiss pursuant to Rule 12(b)(6). Paul Shannon, named in Counts I and V, filed an answer denying the charges. William E. Bergstrom, named in Counts II and V, moved to dismiss those counts pursuant to Rules 12(b)(6), 8(a), and 9(b). Maureen Shannon, named in Count V, moved to dismiss that count pursuant to Rule 9(b).

The plaintiff filed an opposition to these motions to dismiss, but did not file any memoranda, nor did he address any of the arguments made by the defendants. Instead, the plaintiff moved to amend his complaint to describe more fully its basis. That amended complaint simply repeats Counts I and II with minor factual additions. Count III is enlarged to include the allegation that the agreed purchase price was $97,000 for the plaintiff's interest in his invention. Further, he alleges certain representations were made by P.A. Vadala, namely that he did not need to have the documents reviewed by an attorney and that Child Savers, Inc. would pay the plaintiff $72,000 as a consultant. He alleges these defendants never intended to pay the consulting fees and the agreements he signed divested him of his interest in his invention.[1] Counts IV and V are simply repeated. Count VI is a new count, charging all the defendants engaged in unfair and deceptive acts or practices under M.G.L. c. 93A. Count VII is also a new count charging Tullie, Paul Shannon, and Bergstrom with conducting a racketeering enterprise through a pattern of collection of unlawful debts, allowing them to acquire control of J & D Safety Systems, Inc.

The amended complaint drew similar motions to dismiss by the defendants. In addition, defendants Paul and Maureen Shannon jointly filed a motion to dismiss the amended complaint under Rules 12(b)(6) and 9(b), attacking Counts I, V and VI.

## I.

The first question presented is whether the plaintiff should be given leave to amend his complaint. He claims he is entitled to amend his complaint once as a matter of course prior to the filing of any responsive pleading, and only one defendant, Paul Shannon, had filed a responsive pleading. Since a motion to dismiss is not a responsive pleading within the meaning of Fed.R.Civ.P. 15, the plaintiff may amend his complaint against all defendants with the exception of Paul Shannon. *McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir.1978).

The rule is settled that a complaint should not be dismissed for failure to state a claim unless it clearly appears that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Taking the complaint as amended, I review the counts in order.

## II.

### (1) *Counts I and II*

These two counts are identical in nature. Count I charges Paul Shannon and Tullie, and Count II charges Bergstrom and Tullie, with arranging usurious and unlawful loans for the purpose of defrauding the plaintiff of control of his invention. These counts do not state a cause of action for which relief can be granted because there is no allegation or showing that any of the defendants named engaged in the business of making loans in excess of 12%. Further there is no allegation Tullie received any fee or other consideration for introducing the plaintiff to Shannon or Bergstrom. Accordingly, the transactions

---

1. Vadala, in his opposition and memorandum, sets out various facts which, if verified and uncontroverted, would be a proper basis for consideration of summary judgment. Vadala says he bought Herring's interest in J & D for $25,000, contingent on the patentability of the system. Within three days, Vadala's patent attorneys informed him the device was only minimally patentable due to prior patents. Vadala demanded his money back, but Herring refused and filed this lawsuit. In this unverified form, I cannot credit Vadala's statements but they do offer some plausible reason for the paucity of details in the plaintiff's complaint.

do not fall within the regulatory scheme of M.G.L. c. 140, § 96 and must be dismissed.

■ Insofar as these two counts charge that these loans were arranged for the purpose of defrauding the plaintiff of control of his invention, they fail to meet the particularity requirements of Fed.R.Civ.P. 9(b). To prove fraud, the plaintiff must show: (1) a misrepresentation of a material fact; (2) the misrepresentation was made with knowledge of its falsity; (3) the defendant intended the plaintiff rely upon the misrepresentation; and (4) the plaintiff relied upon it to his damage. *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963), *quoting Kilroy v. Barron*, 326 Mass. 464, 465, 95 N.E.2d 190 (1950). Here, the plaintiff founders on the first element—he has not alleged any material fact that was misrepresented. At best he has alleged that these three defendants induced him to engage in a business deal that turned out sourly for him. As stated above, these loans were not unlawful. There was no untrue statement made, nor was any statement made recklessly. The plaintiff simply borrowed money on terms which were agreeable to him at the time, with full knowledge of those terms and full knowledge of the consequences of his failure to repay. He can point to no misrepresentation that induced him to engage in the transactions, nor can he point to any misrepresentation in the actual loan agreements.

Moreover, the defendants are not in a position to defend themselves against this bald assertion. They are not notified of any statement alleged to be false so that they can prepare a defense. Rather, they are charged with taking advantage of the plaintiff. These allegations are vague and conclusory and do not comport with Rule 9(b). *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985) (where the court noted "in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met"); *Wayne Investment v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984) (in which the court stated that Rule 9(b) "require[s] that the *circumstances* of the fraud ... be stated with

particularity ... One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim"). Counts I and II are thus dismissed as to the defendants Tullie, Shannon, and Bergstrom.

### (2) *Count III*

Count III names Donald J. Tullie, P.A. Vadala and J & D Safety Systems, Inc. Tullie is alleged to have induced the plaintiff to sell his interest in the invention to Vadala, knowing of his dire financial condition. The foregoing discussion as to Counts I and II is applicable here as well. There is simply no allegation of a material fact that was misrepresented.

■ As to Vadala, the two representations allegedly made by him and upon which the plaintiff reasonably relied, were (1) that the plaintiff did not need to have the documents reviewed by an attorney, and (2) that he would be paid consulting fees of $72,000 as part of the purchase price of $97,000.

Rule 9(b) provides that malice, intent, knowledge and other conditions of mind may be averred generally, but circumstances constituting fraud must be stated with particularity. The averment here is not stated with such particularity. There is no description of the documents nor any specific allegation of any fraud in the documents which an attorney may have detected and about which he might have alerted the plaintiff. Further, the record shows that consultant fees in the amount of $3,400 were paid before the parties came to a parting of the ways. *See* Count VI. Although withholding payments may be a breach of contract, it does not amount to fraud.

Further, the relief requested in Count III is unclear. The plaintiff requests that the named defendants transfer 2000 shares of stock in J & D Safety Systems, Inc. to him and cancel those shares that were issued to Vadala and Tullie. It is not alleged what role J & D Safety Systems, Inc. played in the transaction, if any, and through whose efforts it is acting. Neither Tullie nor Vadala is alleged to be a controlling officer of

J & D, although Vadala is alleged to be an incorporator.

Finally, the plaintiff demands all payments made by Vadala to him in payment for those same shares he determined to be liquidated damages under Article X of the agreement. The plaintiff neglects to state the amount of the payment, though the $25,000 asserted by Vadala seems to make the arithmetic correct. The plaintiff neglects to cite or furnish the language of Article X, apparently the same agreement he claims he was induced to sign without the assistance of an attorney.

This count is simply too unclear and vague to constitute a cause of action. Count III will be dismissed.

### (3) *Count IV*

Count IV charges Child Savers, Inc. with breach of the consulting agreement. This count is not subject to any motion to dismiss.

### (4) *Count V*

Count V charges a civil conspiracy to defraud. Again, this count does not allege with sufficient specificity the participation and responsibility of individual defendants for the alleged misrepresentations and/or unfair acts and practices delineated. It is simply a vague and conclusory sweep of all of the defendants into one conspiracy without specifying what action each defendant took. Without such specificity, the defendants are unable to prepare any defense. *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1141 (D.Mass.1982) (in cases of "civil conspiracy to defraud ... it is necessary to plead fraudulent conspiracy with enough specificity to inform multiple defendants of facts forming the basis of the conspiracy charge.... Such allegations must 'delineate among the defendants [as to] their participation or responsibilities' in making the statements which are the subject of the suit ... Conspiracies described in sweeping and general terms cannot serve as the basis for a cause of action, and may be dismissed") (citations omitted). Count V will be dismissed.

### (5) *Count VI*

Count VI charges unfair and deceptive acts and practices under c. 93A against all the defendants. This count fails for generally the same reasons discussed above. First, there is no specificity as to what each defendant did that was unfair or deceptive under c. 93A. Taking the counts in order, Tullie arranged for the plaintiff to borrow money (at a high, but not unlawful, rate of interest) from Shannon and Bergstrom. Tullie, Shannon and Bergstrom are not alleged to be in the business of lending money. The terms were clear in writing and accepted by the plaintiff. Similarly, as described earlier, Count III is unclear and this count fails to allege what was unfair or deceptive, if anything, about the purchase price, the agreement to sell, or the consulting agreement. The plaintiff had clear notice of all the terms and does not say he would have acted differently had he been informed of whatever facts he claims were purposely withheld from him.

This count describes nothing more than a straightforward business deal gone sour for all parties. It does not allege conduct that brings it within the grasp of c. 93A. *See Levings v. Forbes and Wallace, Inc.*, 8 Mass.App. 498, 504, 396 N.E.2d 149 (1979) (asserting that the touchstones for finding an action unfair or deceptive include conduct which "is (1) within 'at least the penumbra of some common law, statutory or other established concept of fairness, (2) ... is immoral, unethical, oppressive or unscrupulous ...' ... the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce").

### (6) *Count VII*

In a final salvo, Count VII charges Tullie, Shannon and Bergstrom with violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* It alleges those defendants acquired control of J & D Safety Systems, Inc. and/or Child Savers, Inc. through a pattern of collection of unlawful debts, an

allegation that, if supported, would establish a violation of 18 U.S.C. § 1962.[2] As I parse the allegations, the plaintiff charges the defendants engaged in a pattern of collection of unlawful debts when (1) Shannon loaned the plaintiff $3,500 on two occasions and was repaid $4,500, and (2) Bergstrom loaned the plaintiff $5,000 and was repaid $6,200. Tullie is responsible as a principal in the collection of these notes under 18 U.S.C. § 2. The three defendants derived income from this pattern, a total of $2,200, and this enterprise allowed them to acquire an interest or control of J & D Safety Systems and/or Child Savers, Inc.

A recent First Circuit opinion examining the interaction between the pleading requirements of Rule 9(b) with those demanded by the RICO statute[3] sheds some light on my analysis of this count of the complaint. In *New England Data Services, Inc. v. Barry Becher, et al.*, 829 F.2d 286 (1st Cir.1987), the plaintiff had alleged mail and wire fraud under RICO, but failed to advert to any specific instances of that activity. The district court dismissed the RICO claim for failure to comply with Rule 9(b). In reversing, the Circuit Court struck a balance between Rule 9(b), requiring that allegations of fraud be stated with particularity, and the practical needs of RICO plaintiffs for discovery of facts often "peculiarly within the defendant's control." *Id.* at 289. The Court directed that district courts should conduct a two-stage analysis of RICO claims. The trial court should first determine if Rule 9(b) is satisfied, and, if it is not, should then consider whether to allow discovery, considering such factors as whether a scheme to defraud exists, whether it has been established that interstate commerce is involved, and "whether the communications were between the defendants solely or between the defendants and the plaintiffs." *Id.* at 291–92. The court added that, "[i]n addition to these factors, the court must keep in mind the purpose of Rule 9(b), including avoiding groundless claims and strike suits, the potential damage to a defendant's reputation, especially if the underlying RICO claim is based on criminal activities,[4] and ensuring that defendants have been adequately put on notice to enable them to give meaningful responses." *Id.*

■ As discussed above, I do not find that plaintiff's allegations of fraud fulfill the demands of Rule 9(b). Moreover, in light of *New England Data Services*, I do not believe that further discovery is necessary with respect to the RICO claim. Unlike the situation presented in that case, where critical information was in the peculiar control of the defendants, plaintiff Herring here was intimately involved with all of the transactions complained about, save the hypothetical and unsubstantiated

---

**2.** 18 U.S.C. Section 1962(a) and (b) appear most relevant here. Section 1962(a) declares, in relevant part, that

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18 ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in ... any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(b) states that

[i]t shall be unlawful for any person through a pattern of racketeering or through collection of an unlawful debt to engage or maintain directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

As the above discussion indicates, no "unlawful debt" exists in this case. Thus, only the language relating to "a pattern of racketeering activity" is relevant.

**3.** "Although this circuit has not yet ruled on *how* Rule 9(b) impacts on the pleading of RICO predicate acts, it is clear that Rule 9(b) does *apply* to civil RICO claims." *New England Data Services*, at 289 (emphasis in original) (citations omitted).

**4.** The Court also noted the concern expressed in *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1306 n. 5 (D.Colo.1984) that "[a] charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud. RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon." *New England Data Services*, at 290.

claims of conspiracy ineffectively alleged in Count V and dismissed today. Thus, the First Circuit's concern that a strict application of the pleading requirements of Rule 9(b) would prevent the effective use of RICO because plaintiffs would be unable to garner the necessary factual support for the claim is inappropriate here. Herring's claim fails not for a lack of *factual* support, but for a lack of *legal basis* for his claim. As this Court has twice emphasized in the past in *TLH International v. Au Bon Pain Franchising Corp. et al.*, Civil Action 86–2061–MA, Memorandum and Order, November 13, 1986 [Available on WESTLAW, DCT database] and *Swingbo, U.S.A. v. W.H. Brine Company, et al.*, Civil Action 86–1910–MA, Memorandum and Order, March 6, 1987 [Available on WESTLAW, DCT database] a civil RICO plaintiff must demonstrate a "pattern of racketeering" to sustain the RICO action. In this case, the activity complained of, even if it were unlawful, occurred on three occasions, twice by Shannon and once by Bergstrom; this is not a continuing activity. There is only one victim, the plaintiff. The result of their actions is unclear. Neither Shannon nor Bergstrom is alleged to have gained an interest in J & D Safety Systems and/or Child Savers, Inc. Under facts such as these, a claim founded upon the RICO statute is inadequately supported. *Roberts v. Smith Barney, Harris Upham & Co., Inc.*, 653 F.Supp. 406 (D.Mass.1986) ("To prove a RICO violation, plaintiffs must show, among other things, that Smith Barney engaged in a 'pattern of racketeering activity'", noting that "Congress' intent[ion was] that RICO should reach only continuous criminal activity", *id.* at 411); *see generally Sedima S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This count reaches too far in an attempt to provide the *in terrorem* effect to an otherwise ill-advised business venture. It must be dismissed.

### III.

In summary, and for the reasons discussed above, the complaint is dismissed in its entirety against all defendants except for Count IV, charging breach of contract against Child Savers, Inc.

SO ORDERED.