July 9, 1993 [NOT FOR PUBLICATION]
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2303

MANUEL RODRIGUEZ-O'FERRAL, ET AL.,

Plaintiffs, Appellants,

v.

TREBOL MOTORS CORPORATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Cyr,

Circuit Judges.

Luis G. Rull n-Mar n with whom Zoraida Buxo was on brief for

appellants.
Mari del Carmen Taboas with whom Heriberto J. Burgos-P rez,

Fiddler, Gonz lez & Rodr guez, Rafael P rez-Bachs, and McConnell,

Vald s, Kelley, Sifre, Griggs & Ruiz-Suria were on brief for

appellees.

Per Curiam. Plaintiffs Manuel Rodriguez O'Ferral, Edma
Per Curiam.

Mirta Diaz, and their conjugal partnership, appeal from a district

court judgment dismissing their civil action under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

1964(c), pursuant to Fed. R. Civ. P. 12(b)(6), and denying their

motion to certify a plaintiff class pursuant to Fed. R. Civ. P. 23(a).

Finding no error, we affirm.

I

BACKGROUND

We review a Rule 12(b)(6) dismissal de novo, accepting all

allegations in the complaint, and drawing all reasonable inferences

favorable to plaintiffs. Heno v. Federal Deposit Ins. Corp., No. 92-

1936, slip op. at 2 (1st Cir. June 3, 1993); Feinstein v. Resolution

Trust Corp., 942 F.2d 34, 37 (1st Cir. 1991). In September 1986,

appellants purchased a new Volvo from Trebol Motors Corporation and

Trebol Motors Distributor Corporation ("Trebol"), exclusive Volvo

distributors in Puerto Rico. Appellants, who had planned to buy a

Volvo 240 DL ("Volvo DL"), were persuaded by a Trebol salesman to

purchase a Volvo 240 GLE ("Volvo GLE"), a more prestigious and

expensive model. Thereafter, appellants discovered documentation

inside the vehicle, listing its identification number and describing

it as a Volvo DL.

In May 1991, appellants filed a civil RICO complaint

against, inter alia, Trebol, Volvo Cars of North America, and the

foreign manufacturers, Volvo Car Corporation and Volvo Gothenburg

Sweden, see 18 U.S.C. 1964(c),1 alleging that the defendants had

engaged in a seven-year scheme to defraud Trebol's customers by

selling Volvo DL vehicles "doctored" by Trebol to look like their

pricier cousin the Volvo GLE.2 As the predicate "pattern of

racketeering activity," see 18 U.S.C. 1961(1), (5), appellants

alleged that the defendants committed "millions" of "public" and

1RICO 1964(c) provides:

Any person injured in his business or property by
reason of a violation of section 1962 of this chapter
may sue therefor in any appropriate United States
district court and shall recover threefold the damages
he sustains and the cost of the suit, including a
reasonable attorney's fee.

18 U.S.C. 1964(c). Appellants alleged violations of 1962(a)
(to "use or invest" income derived from a "pattern of
racketeering activity"), 1962(b) (to "acquire or maintain"
through a "pattern of racketeering activity" an interest in any
enterprise), 1962(c) (to "conduct or participate" through a
"pattern of racketeering activity" in the conduct of any
enterprise), and 1962(d) (to "conspire" to violate 1962(a),
(b), or (c)).

2Appellants alternatively allege that Volvo discontinued its
premium GLE model by 1984 (a material fact which Trebol allegedly
withheld from its Puerto Rico customers), or that if factory-made
GLEs were still in production at Volvo, Trebol chose to import
the less expensive DL models, which had been fitted with $2,000
worth of additional options. Trebol sent the Volvo DLs to
Showroom Auto Services, Inc., which replaced the DL
identification "badge" on the automobile with a GLE badge, and
removed all other documentary evidence of the DL model
classification. Trebol listed the disguised DLs as GLEs at $7000
over the price for its standard DL models, a price which far
exceeded the cost of the $2000 option package incorporated in
each car. The alleged "scheme" resulted in net damages of $5,000
to each Trebol customer.

3

"private" acts of mail, wire, and bank fraud, see 18 U.S.C. 1341,

1343, 1344, in furtherance of their GLE scam. The predicate "private"

acts allegedly consisted of an unspecified number of telephone, wire,

and mail communications among the various defendants. Appellants

asserted that further discovery of defendants' internal business

records would be necessary to enable them to specify the exact

contents and participants in these communications. See New England

Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987)

(favoring liberal pre-dismissal discovery to permit RICO plaintiffs to

allege "scheme to defraud" by obtaining information regarding the

time, place, and contents of confidential communications within

defendants' exclusive control). On the other hand, the predicate

"public" acts allegedly consisted of Trebol's commercial advertise-

ments and direct promotional mailings enticing customers into Trebol

to purchase Volvo GLEs during the period from 1984 to 1991. Attached

to their complaint were photocopies of nine ads and eight mailings,

all dated after July 1989. Appellants themselves allegedly sustained

property damage in the amount of $5,000, the net cost differential

between the Volvo DL and the pseudo-Volvo GLE, and sought certi-

fication of a plaintiff class, estimated at 15,000 Trebol customers

who purchased GLEs from 1984 to 1991, holding aggregate claims of $75

million trebled ($225 million).

The district court stayed further discovery pending

disposition of defendants' Rule 12(b)(6) motion and appellants' motion

for certification under Rule 23(a). Meantime, the court directed

4

appellants to submit a more particularized statement of their RICO

claim, fleshing out the factual underpinnings for the allegations in

their complaint.3 In September 1992, based on the unmended vagueness

of appellants' particularized seventy-nine page RICO-claim statement,

the court denied their motion for class certification, and dismissed

the complaint for failure to allege predicate acts of fraud with

sufficient particularity under Fed. R. Civ. P. 9(b).4 Thereafter,

the court denied plaintiffs' motion to amend the complaint. See infra

note 8.

II

DISCUSSION

We have imposed a threshold requirement that a RICO

3Far from particularizing appellants' complaint, the RICO-
claim statement provides general statistical data concerning

Trebol's total television and newspaper advertising expenses for
the years 1988-1991. Appellants also alleged that they had found
that 15 more Trebol advertisements were published in a local
newspaper during August and September 1986, at or about the time
they purchased their Volvo GLE. No photocopies of these ads were
appended. As described by appellants, however, these ads merely
"offer[ed] for sale a Volvo 240 GLE," but contained no other
representations by Trebol. Most importantly, appellants
implicitly concede in their complaint that Trebol's advertise-
ments and mailing did not lure them into buying a GLE, since
appellants arrived on the Trebol lot in 1986 intent on purchasing

a Volvo DL.

4Rule 9(b) requires that, "[i]n all averments of fraud or
mistake, the circumstances constituting the fraud or mistake
shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule
9(b) disqualifies conclusory factual allegations which do not
afford sufficient notice of the fraud claim to enable defendants
to prepare their defense, with a view to minimizing the
reputational harm caused by the filing of pretextual or frivolous
fraud claims. See New England Data, 829 F.2d at 289.

5

complaint "state facts sufficient to portray (i) specific instances of

racketeering activity within the reach of the RICO statute and

6

(ii) a causal nexus between that activity and the harm alleged."

Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991) (emphasis

added); see also Figueroa-Ruiz v. Alegria, 896 F.2d 645, 648 n.3 (1st

Cir. 1990) (delineation of predicate acts of fraud under RICO must go

beyond "vague references"); supra note 4. We turn first to the con-

spicuous temporal impediments underlying appellants' "causal nexus"

allegations.

Appellants concede that Trebol's seventeen advertisements

and mailings, none of which preceded their own 1986 Volvo purchase and

most of which (with one exception) were not directed to appellants,

could not have been the proximate cause of their injury. See Arzuaga-

Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 7 (1st Cir. 1990)

(defendants' misrepresentations took place after plaintiffs' injury,

sustained at the time they moved into the defective homes); McEvoy

Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 792 (1st

Cir.) (illegal payments occurred after RICO defendant terminated

contract), cert. denied, 498 U.S. 992 (1990); see also supra note 3.

They argue, nonetheless, that recovery under RICO may be predicated on

what they characterize as an "indirect" section 1962 injury.5 For

5Appellants argue that Holmes v. Securities Investor Protec-

tion Corp., 112 S. Ct. 1311 (1992), and Sedima, S.P.R.L. v. Imrex

Co., 473 U.S. 479 (1985), support the view that specific allegat-

ions that other Trebol customers probably were induced to buy

Volvo GLEs as a result of particular acts of mail and wire fraud,
and that those customers incurred "section 1961 injuries" (i.e.,

damages directly traceable to predicate acts of fraud) would
suffice to establish Trebol's continuing "scheme to defraud." It
follows, say appellants, that they need not allege with further
specificity any particular predicate act of fraud which directly

7

the reasons discussed below, we need not reach appellants' circuitous

"causal nexus" argument.

Even assuming their argument had merit, their alleged

"section 1962 injury" would be actionable under RICO only if the

predicate acts alleged in the complaint constitute "racketeering

activity" or, in other words, were "indictable" under the mail, wire

or bank fraud statutes. See 18 U.S.C. 1961(1). Their complaint

alleged that the defendants "falsely represented to customers willing

to purchase motor vehicles that they have available for sale factory

made models (such as the Volvo 240 GLE), which were models distinct

and allegedly superior to the other models then manufactured by the

company (such as the Volvo 240 DL)," and that plaintiffs "relied on,

and accepted as true[,] the representations [that] . . . they were

actually purchasing a superior automobile, a so-called 'international

classic', factory built and inherently more expensive motor vehicle."

Although we have combed the entire record, we find no

indication that Trebol ever falsely represented that it was selling

"factory made" Volvo GLEs, as plaintiffs assert. On the contrary,

during its twenty-fifth anniversary sale at least, Trebol advertised

for sale its own customized versions of the Volvo GLE ("ha sido

preparado especialemente para conmemorar") apparently configured with

caused them to buy their 1986 Volvo, provided their injury
proximately resulted from Trebol's sale of a disguised Volvo DL,
or in other words, as an integral part of the same "scheme to
defraud." See 18 U.S.C. 1964(c) ("Any person injured in his

business or property by reason of a violation of section 1962

. . . .") (emphasis added).

8

optional equipment in essentially the same fashion as the vehicle

plaintiffs purchased. Moreover, appellants never alleged or

demonstrated that the nominal classification "GLE", whether generated

at the factory or elsewhere along the distributional chain, invariably

connotes a fixed set of features or options of determinate value, nor

have appellants suggested that defendants misled them as to the

options or features actually incorporated in the Volvo 240 GLE they

purchased. Rather, these ads and mailings suggest, at most, that

plaintiffs presumed too much namely, that all Volvo GLEs were

monolithic and immutable assemblages. Although various types of

"deceptive conduct" other than affirmative misrepresentations may

amount to a "scheme to defraud" under the mail, wire, or bank fraud

statutes, see United States v. Brien, 617 F.2d 299, 307 (1st Cir.),

cert. denied, 446 U.S. 919 (1980); see also United States v. Fontana,

948 F.2d 796, 806 (1st Cir. 1991) (mail fraud); McEvoy, 904 F.2d at

791 (mail fraud and RICO), we think the requirements of Rule 9(b)

demand greater particularity than plaintiffs provided here, even in

the liberal environs of Rule 12(b)(6).

Appellants' complaint asserts that, even if defendants made

no misrepresentations or misleading statements, the scheme to defraud

was perpetuated "through their nondisclosure . . . of material facts

involved in the purchases, namely, the non-existence of the 240 GLE

. . . or the fact that they were making minor and inexpensive

modifications to the less expensive models in order for them to appear

to be more expensive models and/or the fact that these models were

9

modified in situ and were not built at the manufacturing plant."

(Emphasis added.) They argue that their civil RICO claim need not

depend on an allegation that the defendants were under an affirmative

duty to disclose. We do not agree. Especially when alleged

violations of the mail, wire, or bank fraud statutes form the

predicate acts relied on in a civil RICO complaint, mere nondisclosure

will not defeat a Rule 12(b)(6) motion absent a demonstrated

affirmative duty to disclose, or some special circumstance not

presented here. See, e.g., Reynolds v. East Dyer Dev. Co., 882 F.2d

1249, 1252 (7th Cir. 1989) (absent some statutory or fiduciary duty,

affirmative misrepresentations, "half-truths," or elaborate or

deliberate acts of concealment, mail and wire fraud statutes cannot

form predicate for RICO violation).6 Absent such a threshold

requirement, civil RICO could be invoked for the redress of routine

"consumer protection" and "breach of contract" claims. See Arzuaga-

Collazo, 913 F.2d at 5, 6-7 (suggesting that RICO claims which reduce

to ordinary "consumer protection" claims, based on sellers' nondis-

closure of material information, are best left to remediation under

6See also United States v. Biesiadecki, 933 F.2d 539, 542-43

(7th Cir. 1991) (distinguishing Reynolds as nondisclosure case,

noting that nondisclosure may serve as evidence of fraud when
coupled with affirmative misrepresentations); Kehr Packages, Inc.

v. Fidelcor, Inc., 926 F.2d 1406, 1416 (3d Cir.), cert. denied,

111 S. Ct. 2839 (1991); California Architectural Bldg. Prods.,

Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.

1987), cert. denied, 484 U.S. 1006 (1988).

10

state law).7

Even if further particularization of the alleged "private"

predicate acts might arguably await additional discovery, appellants

have failed to allege even one "public" predicate act that is, an

act of misrepresentation or actionable nondisclosure by Trebol which

satisfies the specificity requirement of Fed. R. Civ. P. 9(b). See

New England Data, 829 F.2d at 291 (liberal discovery allowed only if

RICO complaint "otherwise alleges detailed facts") (emphasis added).

Were these RICO plaintiffs licensed to launch a belated "fishing

expedition" on the brink of a Rule 12(b)(6) dismissal, without having

made at least one manifest allegation of actionable fraud, we would

invite commonplace abuse of civil RICO and routine deferral of the

particularized pleading required by Rule 9(b). The district court ap-

propriately concluded that additional discovery would amount to an

unwarranted and "expensive fishing expedition," and properly dismissed

7As newfound grounds for asserting that defendants had a
duty to disclose, appellants ask this court to take judicial
notice of the Disclosure of Automobile Information Act, 15 U.S.C.
1231-1233, and its Commonwealth analog, P.R. Laws Ann. tit.
13, 7351, which purportedly proscribe the removal of automobile
manufacturers' labels disclosing new-vehicle model classifica-
tions. Neither statute was cited or argued to the district
court. Issues raised for the first time on appeal are deemed
waived. See Arzuaga-Collazo, 913 F.2d at 7 (RICO plaintiffs

cannot rely on Thrift Institutions Restructuring Act on appeal
from a Rule 12(b)(6) dismissal if they did not assert a TIRA
claim "either before or after judgment was entered" in district
court); see also Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116

n. 3 (1st Cir. 1993); Miller v. United States Postal Serv., 985

F.2d 9, 12 (1st Cir. 1993).

11

the complaint for failure to state a claim.8

Affirmed.

8Appellants moved to amend their complaint following its
dismissal. The motion identified, for the first time, a few

other members of the proposed plaintiff class (persons who had
bought Volvo GLEs from Trebol), and adverted to additional Trebol
advertisements published just prior to appellants' 1986 Volvo
purchase. For the reasons previously stated, neither amendment
would have cured the essential deficiency in their complaint
the failure to allege even one affirmative misrepresentation or a
duty to disclose material facts. See Correa-Martinez v.

Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990) (no abuse of

discretion where RICO complaint was so vague that proposed
amendment would be "futile").

12