## In re ROBERT D., et al.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1984.

Decided Jan. 3, 1985.

Arthur R. Dingley (orally), Holder & Grover, P.A., Portland, for appellants.

Lendall Smith, Asst. Atty. Gen., (orally), Augusta, for appellees.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

The ten appellants in this consolidated appeal are mentally retarded residential clients of Pineland Center (Pineland), a state institution for the mentally retarded located in New Gloucester. They appeal the judgment of the Superior Court (Cumberland County) affirming the District Court's (Portland) decision certifying their eligibility for admission to Pineland pursuant to 34–B M.R.S.A. § 5475(4) (Supp.1984–1985). Counsel for the appellants argues that for purposes of admission by judicial certification, it is totally irrelevant whether an opening in a community based setting is actually available and therefore the District Court erred in considering whether a less restrictive alternative to the care provided by Pineland was *available*. We find no error and we deny the appeal.

### I.

Petitions for "judicial certification of eligibility for admission to facility for mentally retarded" were filed in District Court in regard to the ten appellants. The District Court held a hearing on all ten petitions. Evidence was offered on eight of the petitions that the client's needs could be met in a community based group home but that no openings existed at the time of hearing. The relevant facts developed at each hearing are as follows:

*Robert D.*

Robert is 33 years old and has lived at Pineland since 1960. He is epileptic, deaf

and profoundly retarded. A social worker testified that Robert will be referred to a group home in the community as soon as one is available. Currently he is on a waiting list for a proposed home which is "very much" in the planning stages. Robert was certified for admission to Pineland for 24 months.

*Richard A.*

Richard is 23 years old and has lived at Pineland since 1967. He is severely mentally retarded and deaf. There was testimony that he would be referred to a community home as soon as an opening existed and that there were three community homes (with no present openings) suitable for Richard's needs. Richard was certified for admission to Pineland for 24 months.

*Kurt L.*

Kurt is 27 years old and has been at Pineland since 1973. He is epileptic and profoundly mentally retarded. There is conflicting evidence as to whether his needs could be met in a community setting and he is on a waiting list for a group home in the community. Kurt was certified for admission to Pineland for 24 months.

*Norman T.*

Norman is 37 years old and has been at Pineland since 1953. He is profoundly mentally retarded and he exhibits several "socially objectionable behaviors" which preclude his acceptance in a community home. Norman was certified as eligible for admission to Pineland for 24 months.

*Robert M.*

Robert is 50 years old and has been at Pineland since 1946. He is profoundly mentally retarded and given to aggressive behavior. There was testimony that his needs could be met in a community setting but no available opening exists. Robert was certified for admission to Pineland for 24 months.

*David H.*

David is 31 years old and has been at Pineland since 1960. He is profoundly mentally retarded. He has been recommended for community placement but no home has agreed to accept him. David was certified as eligible for admission to Pineland for 23 months.

*Paul M.*

Paul is 36 years old and has been at Pineland since 1954. He is profoundly mentally retarded and is given to aggressive behavior including slapping, biting, kicking, pushing, and head-butting. He is so unsteady on his feet that he wears a hockey helmet for protection when walking. There is no evidence that he is ready for community placement and he is not on any waiting list for admission to a community home. Paul was certified as eligible for admission to Pineland for 24 months.

*Norman L.*

Norman is 41 years old and has been at Pineland since 1950. He is profoundly mentally retarded. There is testimony that Norman's needs could be met in a community setting and he has been recommended for a nursing home but there are no available openings. Norman was certified as eligible for admission to Pineland for 18 months.

*Theodore B.*

Theodore is 57 years old and has been at Pineland since 1937. He is epileptic and profoundly mentally retarded. There was testimony that if a community placement were available, he could leave. He is on a waiting list for a group home. Theodore was certified as eligible for admission to Pineland for 23 months.

*Linda H.*

Linda is 33 years old and has been at Pineland since 1956. She is severely mentally retarded but she attends a daily workshop in Freeport. A psychological examiner's response to the question "what do you see as the primary obstacles to Linda's placement into the community" was "availability." Linda was certified as eligible for admission to Pineland for 9 months.

The District Court, relying in part on the unavailability of a less restrictive alternative, certified each person to be eligible for

admission to Pineland. Each individual appeals from the certification order.

## II.

The statutory basis for admission by judicial certification provides as follows:

The court shall certify the client's eligibility for admission only if the petitioner proves, by clear and convincing evidence, that:

A. The client is a person in need of institutionalized services;

B. The needed services are available at the facility named in the application; and

C. There is no less restrictive alternative to the care provided by the facility, consistent with the best interest of the client.

34–B M.R.S.A. § 5475(4). The appellants focus on the absence of the word "available" in sub-part C and construe the statute as requiring the state to prove that a community based setting cannot meet a retarded individual's needs. We are unable to agree with appellant's argument.

Judicial certification is a component of the procedure for regular admission, as distinguished from judicial commitment (34–B M.R.S.A. § 5476) and protective custody (34–B M.R.S.A. § 5477). Under the statute, an admission for extended care and treatment requires: (1) an application, (2) a certificate attesting to the fact that compelling needs of the client are not being met, (3) an initial prescriptive program plan for meeting those needs, and (4) either the informed consent of the client [1] or in lieu thereof, judicial certification. In the present context, judicial certification is a substitute for the informed and voluntary consent of the client. The certificate issued by the court bears no similarity to a judicial order of commitment. It serves only to empower the institution to admit

the client as a resident (34–B M.R.S.A. § 5475(5)) and does not preclude discharge of the client at the request of the parent or guardian (34–B M.R.S.A. § 5480). The period of certification is not permitted to exceed 2 years. See 34–B M.R.S.A. § 5475(6).

Viewing the statutory scheme in its entirety, we are persuaded that the District Court committed no error in considering the availability of alternate facilities. The statute clearly seeks to encourage the use of the least restrictive form of treatment, but it fails to mandate the provision of such treatment when it is unavailable. See 34–B M.R.S.A. § 5002. At numerous points in the statute, the Legislature has expressly permitted consideration of the availability of less restrictive alternatives to institutional care. The general provisions defining the responsibility of the Bureau of Mental Retardation provides that the Bureau shall:

Divert mentally retarded persons from institutional care, whenever professional diagnosis and evaluation, the personal preference of the client or his legal guardian, and the availability of appropriate services indicate that these persons should be placed in community environments and programs.

34–B M.R.S.A. § 5003(2)(B). At the time of the initial assessment of the clients needs and during the formulation of the prescriptive program plan which precedes any admission, the Bureau is directed to consider the clients needs, the programs offered at the institution, and the *availability* of appropriate programs in the community. *See* 34–B M.R.S.A. §§ 5462, 5470.

It is true that the provision dealing with judicial certification, as contained in section 5475(4), does not contain the word available. We readily conclude, however,

---

1. *See* 34–B M.R.S.A. § 5473(3) provides:

The client may be admitted to a facility by informed consent if the chief administrative officer of the facility or his designee has determined that:

A. The client has been informed of and understands both the nature, purpose and proposed duration of the admission, and the provisions of section 5480 regarding the client's right to leave and the limitations on the right; and

B. The client voluntarily consents to the proposed admission.

that the statute permits the court to consider the availability of alternatives to institutional care. The statute must be read as requiring the court to consider the choices which actually exist, and to select among the alternatives, if any exist, in a manner "consistent with the best interest of the client." In the cases before us, the District Court determined that there are no openings for community placement and although such placement might otherwise be preferable to institutionalization, the best interest of the client will be furthered by admission to Pineland. In reaching its decision, the court did not violate the statute. Any other reading of the statute would require the court to withhold certification and relegate the client to legal limbo. While we recognize the plight of the appellants, caught as they are between an institutional setting and limited alternatives, we are required to fairly apply the language of the statute.

The entry must be:

Judgments affirmed.

All concurring.