**Audrey GOTT, et al., Plaintiffs,**

v.

**Edward F. SIMPSON and J. Michael Hughes, Defendants.**

**Civ. No. 89–0266–P.**

United States District Court, D. Maine.

Sept. 21, 1990.

---

Charles Kadish, Portland, Me., for plaintiffs.

Severin M. Beliveau, Stephen E.F. Langsdorf, Preti, Flaherty, Beliveau & Pachios, Augusta, Me., for defendants.

MEMORANDUM OF DECISION AND ORDER REJECTING THE RECOMMENDED DECISION OF THE MAGISTRATE AND GRANTING DEFENDANTS' MOTION TO DISMISS

GENE CARTER, Chief Judge.

The issue presented by this objection to the Recommended Decision of the United States Magistrate, the Honorable David M. Cohen, is whether Plaintiffs' amended complaint alleges that Defendants have engaged in conduct that constitutes a "pattern of racketeering activity" for the purposes of establishing civil liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. After *de novo* review, the Court concludes that the amended complaint fails to allege that the conduct of Defendants amounts to or poses a threat of continued criminal activity, an element essential to the establishment of a RICO "pattern of racketeering activity." The Court, therefore, must dismiss Counts I and II of Plaintiffs' complaint for failure to state a claim under RICO. Because the Court's subject matter jurisdiction over this action is based on the presence of a federal question, and because Plaintiffs' federal claims will be dismissed, the Court will also

dismiss Plaintiffs' state-law causes of action.

## DISCUSSION

In ruling on a motion to dismiss, the Court must take the material allegations of the complaint as true and construe the pleadings in the light most favorable to Plaintiffs. *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987); *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987). The motion will be granted "only if, when viewed in this manner, the pleading shows no set of facts which could entitle Plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). The Court, however, has "no duty to 'conjure up unpled allegations', in order to bolster the plaintiffs' chances of surviving a 12(b)(6) motion to dismiss." *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 444 (1st Cir. 1990), *quoting Gooley*, 851 F.2d at 514. Plaintiffs must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley*, 851 F.2d at 515.

## I.

In brief the amended complaint alleges that Defendants, through the use of the mails and wires, carried out a scheme to defraud Plaintiffs of over $400,000. Pursuant to the alleged scheme, Defendants fraudulently induced Plaintiffs to provide funds for the acquisition of resort property in Maine, purportedly to develop the properties into time-share units. It is alleged that Defendants have not acquired the property for Plaintiffs as promised, have made several misrepresentations to Plaintiffs, and have converted Plaintiffs' investment to their own use.

Applying the appropriate standard for a motion to dismiss, the Magistrate summarized the facts as alleged in the complaint as follows:

The plaintiffs are an informal group of investors who became interested in purchasing resort property in Ogunquit, Maine in order to market time-shares therein. In March, 1989 plaintiff Bernard Twomey was approached by Phyllis Perkins who represented that she was the owner of two properties in Ogunquit suitable for time-sharing: a five-unit condominium building known as Cove Landing and a thirty-six-unit hotel with attached restaurant and lounge known as the Georges Grant Hotel. These properties were heavily mortgaged and were in danger of default or foreclosure. Defendant Hughes, Perkins' friend, claimed to have the contacts to obtain local zoning and other approvals needed to effect the time-share plans. Hughes introduced the plaintiffs to defendant Simpson as a person who had the contacts and expertise to overcome whatever resistance the mortgagee banks might have to transferring the properties. At least two meetings were held at which the parties discussed the acquisition and the progress of other aspects of the arrangement. The plaintiffs clearly stated at these meetings that their participation was based on the understanding that one of the properties, Cove Landing, was to be immediately available for time-share marketing. The defendants assured the plaintiffs that all the necessary approvals had been obtained or were in the process of being obtained for the time-sharing of Cove Landing and that attorneys were drafting the necessary papers. Based upon these representations the plaintiffs agreed to enter a letter of intent with the defendants outlining the terms and conditions of the acquisition, sale and management of the properties. The letter of intent provided, among other things, that title to the properties was to be taken in the name of separate realty trusts. On or about April 12, 1989 defendant Simpson transmitted via telefacsimile an execution copy of the letter of intent to plaintiff Audrey Gott in Montreal, Canada. At or about the same time Simpson sent Mrs. Gott copies of the purported purchase and sale agreements for both properties.

On or about April 28, 1989 the Gotts wired approximately $165,000 (U.S.) from Montreal to the account of the Bostonian Corporation in Massachusetts. A portion

of this money was to be used to pay arrearages on the existing mortgage on Cove Landing so that it would be released for time-share sales. On or about May 15–16, 1989 the plaintiffs delivered $207,000 to the defendants for use in connection with the purchase of Georges Grant. On or about May 17, 1989 defendant Simpson acquired title to the Georges Grant property in the name of Snow's Island, Inc., a Maine corporation in which Simpson is believed to be sole shareholder. No shares in Snow's Island have ever been transferred to the plaintiffs or to an independent real estate trust or other entity in which the plaintiffs hold any legal or equitable interest. At a meeting held on or about May 21, 1989 among the parties the defendants told the plaintiffs that everything was going as planned and showed them the "reservation agreement" that was to be used for taking time-share deposits at Cove Landing. Approximately three weeks after that meeting defendant Simpson telephoned plaintiff William McCauley in Canada to tell him, among other things, that Cove Landing would require an immediate $60,000 to get started. The plaintiffs delivered the money to the defendants in Boston on June 8, 1989. Simpson confirmed that things were on track and told McCauley that he would be providing the plaintiffs with financial statements. Two days later the plaintiffs provided an additional $15,000 to the defendants for the Cove Landing project. Hughes again reassured McCauley that everything was going forward with the project and that he would have the lights and water turned on, but he provided no financial statements. Subsequently, the defendants encouraged McCauley and Twomey to prepare marketing material for Cove Landing and falsely represented that physical improvements were already being made to the premises.

At a meeting held on June 19, 1989 in Franconia Notch, New Hampshire, defendant Simpson told the plaintiffs that the Cove Landing property would not be timeshared and disclosed for the first time that it had not even been purchased. He stated further that an additional $150,000 was required to purchase the property. He refused to account for the funds not yet spent and promised to provide financial statements by July 8, 1989 and to be in touch with McCauley. The plaintiffs have not been provided with any financial statements. None of the funds has been returned and no disclosure had been made as to the whereabouts of any remaining funds. There has been no further communication from the defendants except in connection with the pending litigation.

In addition to these allegations, Paragraph 40 of the amended complaint states that

> On information and belief, Simpson has extensive commercial real estate holdings in the Commonwealth of Massachusetts, the state [sic] of Maine, and elsewhere.... Simpson has conducted such enterprise through a pattern of racketeering, *i.e.*, the instances of fraud averred in this complaint, and, on information and belief, similar frauds perpetrated against others, in violation of 18 U.S.C. § 1962(c). In addition, on information and belief, Simpson has acquired and maintained his interest in and control over such enterprise through a pattern of racketeering, including without limitation the frauds alleged in this complaint, in violation of 18 U.S.C. § 1962(b).

 Rule 9(b) of the Federal Rules of Civil Procedure, which requires that fraud cases be pled with particularity,[1] applies to civil RICO claims, including those based on mail and wire fraud. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir.1987); *see also Fleet Credit Corp. v. Sion*, 893 F.2d at 445. The degree of specificity required in pleading RICO mail and wire fraud "is no more nor less than [is] required in general fraud and securities

---

1. F.R.Civ.P. 9(b) provides:
 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

fraud cases." *Becher*, 829 F.2d at 290, *citing McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir.1980); *Wayne Investment Inc. v. Gulf Oil Corp.*, 739 F.2d 11 (1st Cir.1984). Thus the complaint must state "the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty*, 633 F.2d at 228. Allegations based on "information and belief" do not satisfy Rule 9(b) unless the complaint also sets forth facts on which the belief is founded. *Wayne*, 739 F.2d at 13.

■ In RICO mail and wire fraud cases, however, dismissal is not automatic once the court determines 'that Rule 9(b) is not satisfied; in appropriate cases, a court may determine that a claim as presented warrants allowance of discovery and possible later amendment to the complaint. *Becher*, 829 F.2d at 290–291. In determining whether to allow discovery, the court must weigh a variety of factors, including the policies underlying Rule 9(b), the specificity (or lack thereof) of the general allegations of fraud, and the policy against denying plaintiffs their day in court. *Id.* at 291–92.

■ It is clear that paragraph 40 of Plaintiffs' complaint fails to satisfy Rule 9(b). The allegation that Defendants have perpetrated "similar frauds against others" is entirely conclusory, and the amended complaint is devoid of any factual asseverations, specific or otherwise, on which to base that allegation. Thus the alleged frauds in paragraph 40 of the amended complaint fail to meet the requirements of Rule 9(b).

■ Moreover, after weighing the factors discussed in *Becher*, 829 F.2d at 290–92, the Court finds it inappropriate to allow Plaintiffs to proceed with discovery in an attempt to flesh out their conclusory allegations of fraud. Unlike the complaint examined by the *Becher* court, Plaintiffs' amended complaint does not outline the general contours of a fraudulent scheme, merely omitting the dates, times and locations of the alleged mail and wire fraud. On the contrary, Plaintiffs have not named the victims of these alleged frauds, nor have they provided the vaguest description of the subject matter concerning them. The Court is mindful of the policies in favor of amendments and trying cases on the merits, and against dismissals which would deny plaintiffs their day in court, *cf. Becher*, 829 F.2d at 292; but where, as here, the fraud allegations are so deficient, the purposes of Rule 9(b), including "avoiding groundless claims and strike suits, the potential damage to a defendant's reputation, and ensuring that defendants have been adequately put on notice to enable them to give meaningful responses," *id.*, outweigh the competing policies in favor of allowance of discovery.

In judging the sufficiency of Plaintiffs' attempt to state RICO claims, therefore, the Court may properly consider only those instances of mail and wire fraud which Plaintiffs allege with particularity. As discussed below, those allegations fail to state a claim under RICO.

## II.

Plaintiffs contend that, when taken as true, the alleged acts of mail and wire fraud establish that Defendants violated 18 U.S.C. §§ 1962(b) and (c) of RICO. Those sections render civilly liable any person: who, through "a pattern or racketeering activity," acquires or maintains an interest in or control of an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(b); or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" includes any act indictable under numerous federal criminal provisions, including mail and wire fraud as those offenses are defined at 18 U.S.C. §§ 1341 and 1343. 18 U.S.C. § 1961(1)(B).

RICO states that a "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). To establish the requisite pattern, Plaintiffs "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of contin-

ued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, — U.S. —, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). With respect to the elusive element of continuity, the *Northwestern Bell* Court stated:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* 109 S.Ct. at 2902 (emphasis in original).

■ The alleged scheme to defraud Plaintiffs was carried out over a period of approximately two and one-half months, from March 1989 to June 19, 1989. This period is insufficient to sustain the proposition that the predicate acts constitute a "closed period of repeated conduct." *See id.* Plaintiffs' RICO claim, therefore, depends upon a showing that Defendants' conduct presents a *"threat* of continuity."

■ Whether Plaintiffs have alleged a threat of continuity "depends on the specific facts of each case." *Id.* Plaintiffs do not advance, nor do their allegations support, a contention that the predicate offenses themselves include a specific threat of repetition. Rather, Plaintiffs seek to show that the predicate acts or offenses are "part of an ongoing entity's regular way of doing business." *Id.* The Court of

Appeals for the First Circuit has cautioned that plaintiffs "must demonstrate that the *predicate acts*—here the acts of mail fraud—were a regular way of conducting the ongoing business;" it is not enough to show that a defendant's acts of common law fraud were a regular way of conducting the ongoing business. *Fleet Credit Corp.*, 893 F.2d at 448.

■ The acts of mail and wire fraud alleged in the amended complaint consist of a few telephone conversations between some of the parties, a wire transfer of funds from Plaintiffs to Defendants, and the transmission of a letter of intent via telefacsimile from Defendants to Plaintiffs. All of these alleged violations took place over the course of a single two-and-one-half-month period, and each was related to the plan to develop the two resort properties into time-share units.

Taking the material allegations as true and viewing the amended complaint in the light most favorable to Plaintiffs, the Court concludes that the amended complaint fails to allege, nor does it support a proper inference, that the predicate acts were a regular way of conducting Defendants' business. At best, the complaint establishes that over a period of two and one-half months, Defendants engaged in four separate acts of mail and wire fraud. These acts were part of a single scheme of short duration to defraud Plaintiffs.[2] These allegations, standing alone, simply do not support the conclusion that Defendants' business was regularly conducted using mail and wire fraud. Plaintiffs have failed to allege facts demonstrating a "pattern of racketeering activity." The Court, therefore, will grant Defendants' motion to dismiss Count I.

### III.

■ Count II of the amended complaint alleges that Defendants conspired to vio-

2. Although the Supreme Court in *Northwestern Bell* rejected the proposition that a single "scheme" can never form a RICO "pattern of racketeering activity," it did state that "proof that a RICO defendant has been involved in multiple criminal schemes [is] certainly highly relevant to the inquiry into the continuity of the

defendant's racketeering activity." 109 S.Ct. at 2901. It follows that the presence of a single scheme is a relevant consideration in determining the pattern element; in the Court's view, the allegation of a single fraudulent scheme, executed over a very short period, is determinative in this case.

late 18 U.S.C. §§ 1962(b) and (c) of RICO, subjecting them to liability under 18 U.S.C. § 1962(d).[3] To state a RICO conspiracy claim, Plaintiffs must allege at a minimum that "each defendant agreed to commit two or more specified predicate crimes *in addition to* [alleging] an agreement to participate in the conduct of an 'enterprise's' affairs through a 'pattern of racketeering activity.'" *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981) (emphasis added). While an agreement to violate RICO is necessary to a RICO conspiracy claim, the conspirators need not have accomplished their underlying criminal goals to be liable for conspiracy. *Id.*

 Plaintiffs' bare assertion that Defendants conspired to violate RICO is insufficient to state a claim for RICO conspiracy.[4] Plaintiffs must also make factual allegations respecting the material elements of the offense, including the element of an agreement to violate RICO. The one paragraph of the amended complaint alleging the RICO conspiracy count does not allege any such agreement. The conspiracy count does incorporate by reference paragraphs 1 to 36 of the amended complaint; but after examining those allegations, the Court concludes that the amended complaint fails to allege the elements of a RICO conspiracy.

Nowhere in the amended complaint do Plaintiffs allege that Defendants agreed to commit two predicate crimes or to participate in the conduct of a RICO enterprise through a "pattern of racketeering activity." Further, after careful scrutiny, the Court concludes that the allegations do not support an inference that such an agreement existed. Even assuming that an agreement to commit the acts alleged in the complaint existed, those acts do not amount to a "pattern of racketeering activity." Thus the amended complaint fails to state a claim for RICO conspiracy, and the Court will dismiss Count II.

## IV.

 Having dismissed Plaintiffs' federal claims, the Court declines to exercise pendent jurisdiction over their remaining state-law claims.[5] A federal court's pendent jurisdiction over state-law claims "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *Gibbs* requires a court to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 618–619, 98 L.Ed.2d 720 (1988) (footnote omitted), *citing Gibbs*, 383 U.S. at 726–727, 86 S.Ct. at 1139–1140. In this case Plaintiffs' federal-law claims will be dismissed, and no proceedings on the merits of their state-law claims have been conducted. The Court has balanced the factors discussed in *Gibbs* and *Carnegie–Mellon* and concludes that they weigh in favor of dismissal of Plaintiffs' state-law claims. Plaintiffs are free to pursue these claims in state court.[6]

**3.** 18 U.S.C. § 1962(d) states:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**4.** Count II of the amended complaint states:

As evidenced by the facts more particularly averred in paragraphs 1 through 36, above, defendants, along with others unknown, unlawfully, willfully, and knowingly conspired and continue to conspire to violate the provi-

sions of 18 U.S.C. §§ 1962(b) and 1962(c), in violation of 18 U.S.C. § 1962(d). In so doing, defendants have deceived plaintiffs, have injured them, and have caused them damage.

**5.** Counts III through VII of the amended complaint allege common law fraud, breach of fiduciary duty, conversion, negligent infliction of emotional distress, and breach of contract.

**6.** In response to Plaintiffs' original complaint, Defendants asserted a counterclaim presenting

Accordingly, it is ORDERED that Counts I and II of Plaintiff's amended complaint be, and they are hereby, DISMISSED with prejudice. It is also ORDERED that Counts III, IV, V, VI, and VII of the amended complaint be, and they are hereby, DISMISSED without prejudice. Further, it is ORDERED that Counts I, II, III and IV of Defendants' counterclaim be, and they are hereby, DISMISSED without prejudice.

four state-law claims. Those claims, like Plain- tiffs' state-law claims, will be dismissed.