**CONSUMER ADVISORY BOARD, et al., Plaintiffs,**

v.

**Robert W. GLOVER, et al., Defendants.**

**Civ. No. 91–321–P–C.**

United States District Court, D. Maine.

Sept. 30, 1993.

Judson Esty–Kendall, Pine Tree Legal Assistance, Inc., Bangor, ME, Thomas H. Kelley, Pine Tree Legal Assistance, Inc., Portland, ME, Neville Woodruff, Auburn, ME, for plaintiffs.

Richard G. Bergeron, Asst. Atty. Gen., Augusta, ME, for defendants.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

GENE CARTER, Chief Judge.

This action was instituted on October 23, 1991, by Plaintiff Consumer Advisory Board and a group of Pineland Center residents, outpatients, and guardians to enforce a Consent Decree entered by this Court in 1978. *Wuori v. Zitnay,* (Docket No. 75–80–P) (D.Me. July 14, 1978) (final order of the Court issued *sub. nom. Wuori v. Concannon,* November 22, 1983) (in the current action, Consent Decree is found at Docket No. 7, Exhibit B) (hereinafter "Consent Decree"). The Consent Decree, which settled a class action brought under 42 U.S.C. section 1983, governs the operation of Pineland Center, a state-run institution for the mentally retarded, and includes standards that promote the placement and support of residents in less restrictive community programs. The Complaint joins as Defendants the Maine Commissioner of Mental Health, Robert W. Glover, along with other state officials. Currently pending before the Court is Defendants' Motion to Dismiss based on three affirmative defenses—failure to state a claim upon which relief can be granted, Fed.R. of

Civ.Pro. 12(b)(6); lack of subject matter jurisdiction, Fed.R. of Civ.P. 12(b)(1); and the Eleventh Amendment.[1] As detailed in the subsequent sections, the Court does not find sufficient merit in Defendants' arguments to warrant dismissal of the current action. Before ruling on the motion, the Court will consider Plaintiffs' allegations.

In their Complaint, Plaintiffs allege that Defendants have failed to adhere to provisions of the Consent Decree which call for an annual review of each class member's medical, educational, training, and other needs by an interdisciplinary team of professionals ("IDT"). The IDT process was designed to generate a "prescriptive program plan" for each class member to ensure that he or she will be provided with the services and training needed to support placement in the least restrictive setting possible.[2]

Plaintiffs allege that Defendants have failed to provide for an annual IDT process for many class members and that resulting prescriptive program plans for remaining class members have not met the requirements of the Consent Decree. Plaintiffs also allege that Defendants have failed to create "62 new community placements every six months until the needs of the class are met" as mandated by the Decree. Consent Decree at Appendix B, § C, ¶ 8(b). Lastly, Plaintiffs allege that Defendants have failed to provide for the basic physical safety of residents at Pineland as required by the Decree. *Id.* Appendix A, §§ C, D, N, and Q.

To resolve Defendants' Motion to Dismiss, the Court must accept as true all factual allegations in the Complaint, construe them in favor of Plaintiffs, and decide whether, as a matter of law, Plaintiffs could prove no set of facts which would entitle them to relief. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987); *Gott v. Simpson,* 745 F.Supp. 765, 768 (D.Me.1990).

## I. FAILURE TO STATE A CLAIM

### A. Alleged Constitutional Violations

■ Defendants make two arguments in support of their motion to dismiss Plaintiffs' action, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. First, Defendants argue that only one of Plaintiffs' representative class members makes allegations that implicate the constitutional standard of care owed to those who are involuntarily committed to state mental institutions as established in *Youngberg v. Romeo,* 457 U.S. 307, 315-19, 322, 102 S.Ct. 2452, 2458-60, 2461, 73 L.Ed.2d 28 (1982) (holding that an institutionalized mentally retarded person has constitutionally protected rights to adequate food, shelter, clothing, medical care, freedom from undue bodily restraint, and "minimally adequate or reasonable training to ensure safety and freedom from undue restraint.") According to Defendants, Amelia Doe is the only Plaintiff whose allegations implicate this constitutional standard.[3] The remaining allegations concern inadequate provision of state services in community programs and an insufficient number of community placements, which have resulted in the retention of clients in Pineland who would otherwise be eligible for placement in less restrictive settings. Defendants argue that since Plaintiffs enjoy no constitutional right to community placement,[4] the allegation

1. In an earlier motion, Defendants asked this Court to dissolve the Consent Decree, arguing that the Decree has achieved its purpose or, alternatively, that substantial changes in facts or law warrant its dissolution. The Court has denied today, in a separate Memorandum of Opinion, that motion. (Docket No. 42).

2. The IDT provisions are contained in Appendix A, § D and Appendix B, § B of the Consent Decree.

3. Plaintiff Amelia Doe alleges that she has suffered injuries at the hands of Pineland staff and other residents based on her aggressive behavior;

that but for inadequate treatment by Pineland staff, she could overcome such behavior and avoid unnecessary injuries; and that staff infringe on her liberty interests by subjecting her to undue restraint in response to her aggressive behavior. See Plaintiffs' Complaint, (Docket No. 1), ¶¶ 42-47 (hereinafter Complaint).

4. Considerable case law authority indicates that there is no federal constitutional right to treatment in a least restrictive setting. The Supreme Court declined to adopt the "least restrictive" analysis in *Youngberg,* and a number of Circuit Courts that have addressed the issue have all held there is no constitutional right to community placement. See *Lelsz v. Kavanagh,* 807 F.2d

of unconstitutional conditions on behalf of a single resident "does not permit a reasonable inference that the *systemic* problems which gave rise to the original complaint in 1975 have returned to Pineland." [5]

If Plaintiffs had filed a new cause of action alleging that the State had deprived Plaintiffs of their constitutional rights, Defendants' Motion to Dismiss would be assessed in light of *Youngberg* and recent Circuit Court rulings delineating the constitutional rights of mentally retarded persons being held in state custody. However, Plaintiffs are seeking to enforce provisions of a Consent Decree that go beyond today's constitutionally defined minimum for mentally retarded persons.[6] The Consent Decree not only governs conditions at Pineland but also mandates the State to expand community placements, monitor the progress of individual class members to prepare them for living in these less restrictive settings, and provide various support services to maintain residents in what the parties apparently agreed was a more desirable setting. The Consent Decree, with all of these provisions, was agreed to by Defendants in 1978. When the provisions of the Decree are compared with the allegations in the Complaint, the Court can only conclude that Plaintiffs have estab-

lished a set of facts which, if proven, would establish that Defendants have violated the Decree, entitling them to relief.[7]

### B. Involuntary Confinement

■ In their second argument, Defendants claim that Plaintiffs have failed to allege that any class representatives are being held *involuntarily* at Pineland. Defendants argue that absent such an allegation, the Complaint does not raise any constitutional violations since *Youngberg* established that involuntary confinement was essential for making out a claim of substantive due process violations under the Fourteenth Amendment. As discussed above, *Youngberg* is not the proper point of reference for determining whether Plaintiffs fail to state a claim in this action. Instead, the Court must look to the provisions of the Consent Decree and to the original cause of action that invoked this Court's jurisdiction.

In the original complaint, filed in 1975, the allegation of involuntary status was a critical factor in establishing the requisite "state action" necessary to support a cause of action under section 1983 and, consequently, in invoking this Court's jurisdiction.[8] 42 U.S.C. § 1983. It follows, then, that only those members of the plaintiff class who still meet

---

1243, 1247 (5th Cir.1987); *Clark v. Cohen,* 794 F.2d 79, 93 n. 9 (3d Cir.1986) (*en banc* ) (Becker, J., concurring); *Society for Good Will to Retarded Children Inc. v. Cuomo,* 737 F.2d 1239, 1249 (2d Cir.1984); *Phillips v. Thompson,* 715 F.2d 365, 368 (7th Cir.1983).

**5.** Defendants' Memorandum of Law in Support of the Motion to Dissolve Injunction and Terminate Consent Decree, (Docket No. 32), at 10, n. 3.

**6.** Although Plaintiffs formally filed this action as a new law suit seeking a declaration that the Consent Decree still governed the rights of the mentally retarded and seeking its enforcement, this Court has treated the new action as if it were a motion filed in the earlier action seeking enforcement of the 1978 decree. The Court of Appeals for the First Circuit found that this Court was correct with respect to the procedural posture of this case. See *Consumer Advisory Board v. Robert Glover,* 989 F.2d 65, 66 (1st Cir.1993).

**7.** *Langton v. Johnston,* 928 F.2d 1206 (1st Cir. 1991), gives additional support to this Court's decision to assess Plaintiffs' Complaint with re-

spect to the provisions of the Decree rather than in light of later constitutional rulings. In *Langton,* the Court of Appeals for the First Circuit indicated that a lower court correctly avoided ruling on constitutional issues when considering whether defendants complied with a consent decree that incorporated higher standards than those mandated by the Constitution. The Court of Appeals stated,

> It was unnecessary to consider constitutional standards ... because the existing consent decrees 'require(d) the provision of adequate treatment for patients' at a level beyond that required by any applicable constitutional minima....

*Id.* at 1217.

**8.** The Plaintiff class in the original complaint was defined as:

> All persons who were involuntarily confined residents of the Pineland Center on or after July 3, 1975, or who were conditionally released from Pineland and in community placements on or after July 3, 1975....

*Wuori v. Zitnay,* (Docket No. 75–80–P) (D.Me. July 14, 1978) (in current action, original com-

the original class definition (*i.e.*, those who were held involuntarily at Pineland or released conditionally by the institution on or after July 3, 1975) are entitled to relief in the current enforcement action. If no one has been held at Pineland involuntarily for a number of years, as Defendants allege, then there are no plaintiffs left in the class who are entitled to relief. After a careful reading of Maine's statute governing the admission of mentally retarded people into the State's care, this Court believes that Defendants' attempt to restrictively define the term "involuntary" is merely an exercise in semantics and that allegations in the Complaint are sufficient to establish the existence of a class entitled to relief under the Consent Decree.

In an affidavit submitted by Defendants in support of their motion to dismiss, Paul Peterson, the Superintendent of Pineland Center, states:

> There are *no* clients at Pineland Center who have been involuntarily committed, and there have not been for a number of years. Every client at Pineland Center is on voluntary status ... *or is judicially certified for admission in accordance with 34–B M.R.S.A. § 5475.*

Affidavit of Paul P. Peterson, (Docket No. 40, Exhibit G) at ¶ 4 (emphasis added). By the phrase "involuntarily committed", this Court understands Mr. Peterson to be referring to the procedure of "judicial commitment" as described under section 5476 of Maine's Statute governing mental health and mental retardation. 34–B M.R.S.A. § 5476. While it

may be true that Pineland no longer serves clients who have been judicially committed, it does not follow that no person is being held *involuntarily* at the institution. Under the provisions governing judicial certification, which is identified by Mr. Peterson as a procedure used for admitting patients to Pineland, mentally retarded persons can be institutionalized against their will.

From the point of view of the mentally retarded individual, admission to Pineland pursuant to judicial certification or judicial commitment are functional equivalents. Both procedures are initiated by the State in court proceedings that are predicated on the presumption that the individual is not capable of giving informed, voluntary consent to his confinement.[9] Whether admitted pursuant to judicial commitment or judicial certification, the individual is not free to leave the facility at his own request. In fact, judicial certification may be a less desirable form of admission than under other statutory provisions because a court can order the certification to stay in effect for up to two years before requiring the State to make another showing to support continued confinement. 34–B M.R.S.A. § 5475, subd. 6. Under judicial commitment, the court may order confinement only up to 4 months in the first instance; never to exceed one year after subsequent hearings. 34–B M.R.S.A. § 5476, subd. 8.[10]

Based on this reading of Maine law, this Court concludes that mentally retarded indi-

---

plaint can be found at Docket No. 7, Defendants' Exhibit A).

**9.** The statutory scheme and language support the conclusion that judicial certification is an involuntary process. Title 34–B M.R.S.A. section 5474 provides as follows:

> **§ 5474. Involuntary admissions**
> **1.** ...
> **2. Admission by judicial certification or judicial commitment.** If the chief administrative officer of a facility ... has determined that the client is not capable of giving *informed consent* to admission, a client may be admitted ... only after judicial certification ... or judicial commitment ... (emphasis added).

Title 34–B M.R.S.A. section 5473, subdivision 3 defines *informed consent* as being informed of and understanding "the nature, purpose and proposed duration of the admission" *and* voluntarily consenting to the admission.

**10.** One major difference between judicial commitment and judicial certification is that the parent or legal guardian of an individual who has been judicially certified may at any time obtain their discharge from the institution. 34–B M.R.S.A. § 5480, subd. 3. In the absence of such intervention, the individual may only be released if the institution's staff and the regional office of the Bureau of Mental Retardation recommend discharge. 34–B M.R.S.A. § 5480, subd. 2.

Those individuals who have been judicially committed, on the other hand, may be discharged only if and when the State determines they no longer pose a likelihood of serious harm or the court determines that the State has failed to meet its burden of proving likelihood of serious harm by clear and convincing evidence in proceedings for continued commitment. 34–B M.R.S.A. § 5476.

viduals who were judicially certified for admission to Pineland on or after July 3, 1975, satisfy, within the meaning of the Consent Decree, the definition of involuntarily confined class members who are entitled to relief.[11] The Court must next consider whether the Complaint names Plaintiffs who would fall under the class definition. Plaintiffs' Complaint alleges that three out of nine representative class members are currently residing involuntarily at Pineland and that another four class members formerly resided involuntarily at the institution.[12] Of those defined as "involuntarily committed", the Complaint states that at least one class member was judicially certified.[13] Several other class members are described as profoundly retarded and as being long-term wards of the Bureau of Mental Retardation.[14] It is possible these Plaintiffs were also admitted pursuant to judicial certification since severe disabilities would most likely render them incapable of giving informed, voluntary consent which is the prerequisite to voluntary admission. The Complaint labels only one class member as voluntary.[15]

The Court finds that these allegations are sufficient to establish that representative Plaintiffs and class members were, or have been, held involuntarily at Pineland and that, as a matter of law, Plaintiffs could prove a set of facts that would entitle class members to relief.[16]

## II. LACK OF SUBJECT MATTER JURISDICTION AND THE ELEVENTH AMENDMENT

Defendants further argue that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and that the action is barred by the Eleventh Amendment. Defendants' arguments are based on the notion that later constitutional rulings lowering the standard of care owed by a state to the mentally retarded has eroded the basis for this Court's exercise of jurisdiction in enforcing a Consent Decree with provisions that go well beyond this constitutional minimum. Further, Defendants argue that the State of Maine has incorporated many of the Decree provisions concerning community placement into its laws governing the rights of the mentally retarded at the same time as the Supreme Court has clarified there is no federal constitutional basis for asserting such rights. As a result, Defendants argue that the Eleventh Amendment bars this Court from enforcing many of these provisions since federal courts many not enjoin state officials based on violations of state law. *Pennhurst State School and Hospital v.*

---

**11.** Defendants' cite *In Re Robert D.*, 486 A.2d 134 (Me.Supreme Judicial Court, 1985), in support of their proposition that judicial certification is not an involuntary procedure. After close study of that case, this Court determines that it does not stand for the proposition for which it is cited; *i.e.*, that judicial certification cannot be categorized as involuntary commitment within the meaning of the Consent Decree.

In *In Re Robert D.*, the Maine Law Court distinguished between the procedures of judicial commitment and certification for the purpose of upholding a lower court's certification of a group of plaintiffs to Pineland even though each plaintiff was assessed as qualified for community placement. The court did not distinguish between each procedure on the basis of voluntariness.

**12.** Plaintiffs Amelia Doe, John Doe, and April Wyman are currently residing involuntarily at Pineland; Plaintiffs Mary Doe, Faye Doe, Pamela Perro, Robert Clavette, and William Toothaker formerly resided involuntarily at Pineland. *See* Complaint, ¶¶ 10–18.

Several of the class members classified as formerly residing at Pineland "involuntarily" were apparently released conditionally to community placements and, hence, would also fall within the class definition under the Consent Decree.

**13.** April Wyman is judicially certified for placement at Pineland. *See* Complaint, ¶ 60.

**14.** Plaintiffs Amelia Doe and Pamela Perro are described as profoundly retarded. *See* Complaint at ¶¶ 42 & 62.

**15.** Plaintiff Bonnie Hanson is a "voluntary" resident at Pineland. See Complaint at ¶ 72.

**16.** Additional documentation recently submitted by Defendants further supports this Court's finding that members of the plaintiff class are being held involuntarily at Pineland and are entitled to relief. That documentation indicates that "all Pineland residents are now judicially certified for admission". Affidavit of Paul Peterson, (Docket No. 41) at ¶ 6.

*Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

 This Court directs the parties to refer to part III of its Memorandum of Decision and Order Denying Defendants' Motion to Dissolve Injunction and Terminate Consent Decree, (Docket No. 42) also issued today, which discusses the basis for this Court's jurisdiction over this Enforcement Action as well as this Court's belief that the Eleventh Amendment does not serve as a bar to its jurisdiction. The Court will add one further consideration in support of its decision to deny Defendants' Motion to Dismiss on the above-stated grounds. The Supreme Court has clearly held that a federal court is not barred from entering a consent decree providing broader relief than the court could have awarded after trial. *Local Number 93, International Association of Firefighters, etc. v. Cleveland,* 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986). Likewise, a federal court is not barred from enforcing provisions in a decree previously entered into by the parties merely because the constitutional claims upon which the original complaint was based would no longer serve as a basis for relief if plaintiffs were to file a new cause of action. The contrary position urged by Defendants, much like the argument posed by petitioners in *Rufo v. Inmates of Suffolk County Jail*[17]:

'would necessarily imply that the only *legally enforceable* obligation assumed by the state under the consent decree was that of ultimately achieving minimal constitutional ... standards.... Substantively, this would do violence to the obvious intention of the parties that the decretal obligations assumed by the state were not confined to meeting minimal constitutional requirements. Procedurally, it would make necessary, as this case illustrates, a constitutional decision every time an effort was made either to enforce or modify the decree by judicial action.'

— U.S. ——, ——, 112 S.Ct. 748, 763, 116 L.Ed.2d 867 (1992) (quoting from *Plyler v. Evatt,* 924 F.2d 1321, 1327 (4th Cir.1991)).

**17.** In *Rufo,* the Supreme Court rejected an argument by defendants that a ruling indicating double bunking of prisoners may not violate the

Hence, later court rulings that have lowered the constitutional obligations owed by states to involuntarily confined mentally retarded persons have not eroded this Court's subject matter jurisdiction over a Consent Decree that initially derived from a federal cause of action. 42 U.S.C. § 1983. Further, since Plaintiffs are not calling on this Court to enforce Maine law but have based each claim for relief on specific provisions of that Consent Decree, the Eleventh Amendment does not bar this Court from issuing any orders with respect to the current action.

Accordingly, it is hereby *ORDERED* that Defendants' Motion to Dismiss be, and it is hereby, *DENIED.*

constitution was a sufficient basis for modifying a provision in a consent decree requiring one prisoner per cell.